**Liao v. Liao.**

C.P. of Monroe County, No. 790 DR 2012, No. 6259 CV 2012.

*Robert M. Maskrey, Jr.,* for plaintiff.
*Ronald Liao*, Pro se.

WILLIAMSON, *J.*, March 6, 2013—This custody matter is before the court on Lyudmila Liao's ("mother") request for a hearing following the petition for modification filed by Ronald Liao ("father"). Mother and father are the parents of Maximillian Liao, age 8 (DOB 6/2/04). The most recent order of court dated February 19, 2013, adopted the recommendation of the custody conciliator dated February 5, 2013. That most recent order provided shared legal custody between mother and father, with mother having primary physical custody subject to father having physical custody during the school year from 6:00 p.m. Friday to 8:00 a.m. Monday on the First, second and

fourth weekends of the month and Wednesdays from after school until 8:00 p.m. The order also provided father with every other week in the summer and a shared holiday schedule.

At time of the full evidentiary hearing in this matter held February 26, 2013, the parties were virtually in agreement with a proposed custody schedule. Mother had motioned for the hearing to clarify and memorialize an agreement of the parties as to custody arrangements concerning attendance at church and Chinese school on Sundays. Mother also sought to have the weekend schedule modified to return the child to her on Sundays at 7:00 p.m. and the Wednesday time with father modified to return the child at 7:00 p.m.

At the hearing, father agreed these modifications were acceptable, but he hoped mother would consider placing the child in his care when available, rather than in day care. Father initially had concerns with the day care provider, but at the hearing agreed that the minor child was being cared for properly when at the day care. Father had some concerns for the outside safety of the day care, and the number of young children in care there.

The brief factual history in this case is as follows:

Mother and father were married on December 30, 1997. Mother has two (2) children from another relationship: Ivan, age 23 and Anastasia, age 24. Ivan is employed and lives at home with mother. Anastasia is in the U.S. Air Force and stationed in South Carolina. Mother is from Ukraine and now a U.S. citizen. Father is from Taiwan

and also a U.S. citizen.

Mother and father lived together at 274 Mary Street, East Stroudsburg, Monroe County, Pennsylvania until their separation on July 3, 2012. Mother now lives on Hill Street, East Stroudsburg, Pennsylvania, approximately one (1) block from father. Max lives with mother and stays with father pursuant to the schedule referenced above. Mother is employed part-time as a substitute cafeteria worker in both the Stroudsburg and East Stroudsburg school districts. Father is employed by Wells Fargo as a computer engineer. He commuted to work for a while in reading, Pennsylvania, but since late 2011 he has been able to work from home.

Max is in the 3rd grade at J.M. Hill Elementary School in East Stroudsburg, Pennsylvania. Max is very talented. He does well in school, is an accomplished artist, and he plays the piano. He also enjoys Taekwondo, baseball, soccer, skating, bowling, swimming and golf. He is learning Russian and Chinese. Both parents encourage Max in all that he does.

## DISCUSSION

We must consider all relevant facts in determining a custody order following a full evidentiary hearing. The following factors must be considered when awarding custody:

"(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors giving weighted consideration to those factors which affect the safety of

the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and

special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor."

23 Pa. C.S.A. §5328(a)

In this case, we note the parties were essentially in agreement with a revised custody schedule. Father did not want to lose more time, other than agreeing to a modification for his weekend periods to end at 7:00 p.m. on Sundays and the Wednesday visits at 7:00 p.m. Father had a concern regarding the necessity of using the daycare instead of asking father to watch the child. Father also had a concern for some safety issues at the daycare, and a related, but irrelevant concern to these proceedings, regarding proof of daycare expenses incurred. As the parties were essentially in agreement with regard to the custody schedule, we will fashion an order to encompass

the matters upon which they agreed. We will discuss the factors considered to be in the best interests of the child in arriving at an order that is the same as the parties agreed.

We find both parties will be likely to encourage and permit frequent and continuing contact between the child and the other party. For the most part, and with few exceptions, the parties work well together in seeing that their son spends time with both parents, giving consideration to Max's schedule, his activities, and his need for continuity and routine. The parties have also previously agreed to a schedule outside of the existing order for church and Chinese school.

We find no present or past abuse of the parties or members of the household. We did hear testimony that father has had periods of time where he has yelled at mother, and we viewed a video of an incident that occurred in 2006. We find such incidents with mother will likely no longer occur now that the parties are separated. We did not find evidence of this behavior directed at the child. However, father should be aware that his past behavior is upsetting to mother and continues to effect this relationship, even though that relationship is now only about raising Max.

Both parties perform parental duties with Max. However, we find this factor favors mother as she has always provided the primary care, while father worked and provided for the household. Mother also teaches Max about art, and tutors him in his schoolwork and learning Russian. It was refreshing to hear father's praise for mother in her upbringing of Max.

Max needs stability and continuity in his education, family life and community life. He is still finding his way with two households since the time of separation. The close proximity of the two households allows for more flexibility in the court's order. However, Max's age and his involvement in various activities leads us to believe he should maintain a routine when possible. This factor does not necessarily favor one parent over the other, but he has grown accustomed to the current routine and he is excelling in it. Therefore, it should remain essentially unchanged, recognizing the parties can always agree to modify the schedule as works best for them and Max.

There was no testimony of extended family, other than Max's older siblings. The sibling relationships are positive to Max and he enjoys spending time with them. These are important factors for Max to reside with mother.

We met with Max in camera without the parties or attorneys. For his age, Max spoke well and was able to give well-reasoned answers to questions, including those that had nothing to do with custody or his parents. We find Max to be very bright, engaging, and happy, despite having to be in court, and overcoming some initial nervousness. Max likes the current schedule between the parties and we give this some weight.

We find neither parent has exhibited behavior to turn the child against the other parent. Therefore, this is a non-factor.

We find Mother is more likely, as the primary custodian, to maintain a loving, stable, consistent and nurturing

relationship adequate for the child's needs. The same can be said for attending to Max's daily physical, emotional and educational needs. That is not to say father cannot do it; mother is just in a better position to do it based upon her current relationship and time with Max, and the activities he does with her. These two factors slightly favor mother.

The residences of the parties are extremely close and allow for Max to spend considerable time with both parents. While Max is young, it is important he has one primary household, but spends a reasonable amount of time with the other parent. This will be reflected in the court's order.

Both parties are available to care for Max or provide adequate and appropriate child-care arrangements. This is a non-factor. Father does request he be considered first to watch Max before he is placed in child-care. Mother has concerns with father's reliability, and the level of communication with father based upon past experience. We are reluctant to put anything in the order in this regard, as it micromanages how time and manner of a parent's custody period is spent. In some instances, it may cause problems, both in enforcement, and in a practical sense. Therefore, this is something the parties should consider on their own when in mutual agreement. If mother does decide to try this, and it goes smoothly, both parents are to be commended and Max will surely benefit. If it does not work, because father is unreliable or puts additional pressure on mother, then there is no fault with her refusing to do so in the future.

There is a level of conflict between the parties. Mother

is soft spoken, while father is more easily excited. Due to past issues of the parties, it appears mother feels intimidated by father. Several incidents since the separation confirm mother's trepidations. There was an example of over 40 text messages sent by father to mother after he allowed Max to be picked up early by mother, then demanded Max be returned for the end of his custody period. Father felt his acquiescence to the early pick-up would show he did not want to exercise his allotted time with the child. Father should know, such concessions are looked upon favorably by this court; but, incessant texts, calls, or e-mails are not. With some forethought by father in not expressing all of his emotions or anger at a situation with mother, he can improve the relationship, which in the end, serve Max's best interests. Some coping skills or family counseling for father to avoid being "set off" as he described it, is recommended.

We find no history of alcohol or drug abuse by the parties or members of the household, nor any mental or physical conditions that may effect custody. These are non-factors.

Since the parties were essentially in agreement with each other at the time of hearing, and the court finds the schedule proposed at the hearing is in the best interests of the minor child, we adopt the following order of court regarding custody:

ORDER

And now, March 6, 2013, following a full custody hearing in this matter, with regard to custody of the minor

child, Maximillian, it is ordered as follows:

## 1. SHARED LEGAL CUSTODY

Mother and father shall share legal custody of their child. For purposes of this order "shared legal custody" shall mean:

(a) All decisions affecting the child's growth and development, including but not limited to education, choice of school, medical and dental treatment, religious training, athletic pursuits and extracurricular activities shall be considered major decisions, and shall be made by the parties jointly after discussion and consultation with each other with a view toward obtaining and following a harmonious policy in the child's best interest;

(b) Each party agrees to keep the other informed of the progress of the child's education and social adjustment. Each party agrees not to impair the parties right to shared legal or physical custody of the child. Each party agrees to give support to the other in the role as parent and take into account the consensus of the other for the physical and emotional well-being of the child with the recognition that their life styles may be different;

(c) While in the presence of the child, neither party shall make or permit any other person to make any remarks or do anything which would in any way be construed as derogatory or uncomplimentary to the other parent. It shall be the express duty of each parent to uphold the other parent as one whom the child should love and respect;

(d) It shall be the obligation of each parent to make

the child available to the other in accordance with the following schedule and to encourage him to participate in the plan hereby set forth;

(e) Each parent shall have the duty to notify the other of any event or activity that could reasonably be expected to be of a significant concern to the other parent or to the child;

(f) The parents shall communicate with one another concerning any parenting issues requiring consultation and agreement regarding a proposed modification of the custody schedule which may, from time to time, become necessary, and shall specifically not use the child as a messenger at any time. Neither party shall discuss with the child any proposed changes to this schedule or any other issue requiring consultation and agreement prior to discussing the matter and agreement with the other parent;

(g) With regard to any emergency decisions which must be made, the parent with whom the child is physically residing at the time shall be permitted to make a decision necessitated by the emergency without consulting the other parent in advance; however, that parent shall inform the other of the emergency and consult with him or her as soon as possible. Day to day decisions of a routine nature will be the responsibility of the parent having physical custody at that time;

(h) Mother and father agree to share complete and full information from any doctor, dentist, teacher or other authority, and each parent may have copies of any reports

given to them as a parent. Each parent shall also request any authority to forward copies to both parents at their respective addresses. Such documents include, but are not limited to, medical reports, athletic and school reports, birth certificates, etc. Both parents may and are encouraged to attend conferences and activities with the child. Both parents shall be listed with any school or day care center as parents to be contacted in the event of an emergency and to be notified regarding school events. Mother and father agree to share copies of any school notices in a timely fashion;

(i) Both parents shall attempt to avoid scheduling any activities or appointments for the child which would require his/her attendance or participation during the time when he/she is scheduled to be in the physical custody of the other parent without the parent's prior approval; however, both parents agree to cooperate and be flexible in accommodating the child's scheduled activities.

## 2. SHARED PHYSICAL CUSTODY

The parties shall share physical custody of the minor child according to the following schedule:

a) Academic Year: Mother shall exercise primary physical custody of the minor child, under and subject to father's periods of partial physical custody which shall occur on the first, second and fourth weekends of each month from Friday at 6:00 p.m. to 7:00 p.m. on Sunday. In addition, father shall exercise custody of the minor child each week on Wednesday from the time of the child's dismissal from school until 7:00 p.m. In addition, the

parties may share custody of the minor child at such other days and times upon which the parties shall mutually agree.

b) Summers: The parties shall alternate physical custody of the minor child on an alternating weekly schedule from Sunday at 6:00 p.m. to the following Sunday at 6:00 p.m. For purposes of this order, the summer schedule shall be effective as of the third Sunday in June and shall end on the third Sunday in August. The alternating weekly schedule shall begin with father on the third Sunday in June.

c) Every Sunday, mother shall be entitled to take the minor child to church and mother shall also transport the minor child to Chinese school every Sunday. Mother shall have physical custody every Russian Orthodox Christmas and Russian Orthodox Easter as set forth below. Father shall have physical custody every Easter holiday as set forth below. This shall supersede all other portions of this custody schedule.

## 3. HOLIDAYS

The following holiday schedule supersedes all other partial and vacation custody schedules established in this order:

(a) The parties shall alternate the major holidays. The alternating holiday schedule shall include the holidays of President's Day, Memorial Day, Fourth of July, Labor Day, and Thanksgiving. This schedule shall start with father on Memorial Day in 2013, and rotate between the parties (i.e. Memorial Day 2013 — father; Fourth of July 2013 — mother; Labor Day 2013 — father; Thanksgiving

2013 — mother, etc.) The parties will also equally share the minor child's breaks from school at the Thanksgiving, Christmas and Easter/spring holidays as set forth below. Those periods of partial custody for which no times for exchange were heretofore scheduled shall begin at 9:00 a.m. and end at 7:00 p.m.

(b) Mother shall have physical custody on Mother's Day weekend and father shall have physical custody on Father's Day weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m.

(c) The parties shall share the child's Thanksgiving Vacation and Holiday from school in which the following dates and times shall alternate between the parties each year:

(1) Thanksgiving Eve at 6:00 p.m. until the immediately following Friday at 6:00 p.m. This shall start with mother in 2013, Father in 2014, Mother in 2015, etc.

(d) The parties shall alternate custody of the child during the child's Christmas Vacation from school as follows:

(1) From December 26th at noon until December 28th at noon, father shall have physical custody beginning in 2013 and each odd year thereafter (2015, 2017, etc.) Mother shall have custody on these dates in the even years.

(2) December 28th at noon until December 31st at noon, Mother shall have physical custody beginning in 2013 and each odd year thereafter (2015, 2017, etc.) Father

shall have custody on these dates in the even years.

(3) Christmas Eve Day — Christmas Day: Father shall have physical custody of the child from December 24th at noon through December 25th at noon each year. Mother shall have physical custody from December 25th at noon to December 26th at noon each year.

(4) From December 31st at noon until January 1st at noon, mother shall have physical custody of the child each year.

(e) Russian Orthodox Christmas:

(1) Every Russian Orthodox Christmas, mother shall have physical custody of the child from January 6th at 2:00 p.m. through January 7th at 7:00 p.m. each year.

(f) Russian Orthodox Easter and Traditional American Easter holidays:

(1) Every Russian Orthodox Easter, mother shall have physical custody from the Saturday of the Russian Orthodox Easter at 2:00 p.m. until the Russian Orthodox Easter Sunday at 7:00 p.m. each year.

(2) Every Good Friday/Traditional American Easter, father shall have physical custody from Good Friday at noon until Traditional American Easter Sunday at noon each year.

In the event that a holiday to which father is entitled shall fall within a day prior or subsequent to weekend period of partial custody to which father would also be entitled, that period of weekend partial custody shall be

extended to include father's period of holiday partial custody.

## 4. SUMMER VACATIONS

Beginning in 2013, mother and father shall enjoy summer holiday time with the minor child during their periods of custody pursuant to the provisions herein. Each parent shall provide to the other parent the telephone number and address where they will be exercising their period of vacation custody.

## 5. TRANSPORTATION

The parents shall share transportation equally as they can agree. If they are unable to agree, in order to facilitate the exchange of partial custody, it shall be the responsibility of the party who will be obtaining partial custody, or a designee, to pick up the child at the residence of the other party. Appropriate passenger restraint devices shall be utilized by the child while being transported.

## 6. TELEPHONE ACCESS

Each parent shall allow the other parent to have private, liberal and reasonable telephone access with the minor children during that parent's period of partial custody. This shall include the children initiating such contact. Reasonable telephone access shall be construed to be daily at 7:00 p.m., emergencies excepted. If the calling parent leaves a message at the residence of the custodial parent, custodial parent shall require the children to return the. telephone call to the non-custodial parent.

## 7. NOTICE: CHANGE OF RESIDENCE OR

## RELOCATION

Before a party may relocate the children or change the residence of the children in a manner which significantly impairs the ability of other individuals with custody rights to the children to exercise those rights, the party must comply with the requirements and obligations of Pennsylvania's Custody Law set forth in 23 Pa. C.S.A. 5337.